## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANITA S. KINNEY,** )<br>**2520 Union Street** )<br>**Blue Island, IL 60406** )<br> )<br>**Plaintiff,** )<br> )<br>**v.** )<br> )<br>**DAVID M. CAPOZZI,** )<br>**Executive Director,** )<br>**U.S. Architectural and Transportation** )<br>**Barriers Compliance Board** )<br>**(U.S. Access Board),** )<br>**in his official capacity** )<br>**as well as his successors and assigns,** )<br>**1331 F Street NW, Suite 1000** )<br>**Washington, DC 20004-1111** )<br> )<br>**Defendant.** )<br> ) | **Case No.: 1:19-cv-02844**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW**, Plaintiff Anita Kinney, by and through her undersigned counsel, and complains of the Defendant, David M. Capozzi, Executive Director, U.S. Architectural and Transportation Barriers Compliance Board, as follows:

## NATURE OF THE CASE

1. This is an action to recover damages for Defendant's unlawful discrimination, hostile work environment, and failure to accommodate, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII") and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act").

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States.

3. Venue is appropriate as the unlawful practices alleged in this complaint occurred in the District of Columbia.

## PARTIES

4. Plaintiff is currently a resident of Blue Island, IL, who was previously employed by the Defendant in Washington, D.C. from August 2015 to August 2018.

5. During the relevant period, Plaintiff was Defendant's employee within the meaning of Title VII and the Rehabilitation Act, and entitled to the protections of the same.

6. Defendant, David M. Capozzi is the Executive Director of the U.S. Architectural and Transportation Barriers Compliance Board, which is referred to as the U.S. Access Board, and is named in his official capacity. The U.S. Access Board is a federal agency located in Washington, D.C.

7. During the relevant period, Defendant was Plaintiff's employer within the meaning of Title VII and the Rehabilitation Act.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.

9. Plaintiff filed a formal equal employment opportunity ("EEO") complaint with Defendant's EEO designee, as directed by Defendant, on September 12, 2018.

10. Plaintiff requested a hearing before an EEOC Administrative Judge following the Defendant's completion of its investigation of Plaintiff's formal EEO complaint.

11. On September 19, 2019, Plaintiff withdrew her request for a hearing.

12. As over 180 days have passed since the Plaintiff filed her formal complaint, she has exhausted her administrative remedies and may proceed with filing in U.S. District Court pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

### *Plaintiff is a member of a protected class.*

13. Plaintiff's is a member of a protected class based upon her Race (Hispanic/Multiracial), National Origin (Brazil/Puerto Rico), and Disability.

14. Plaintiff engaged in protected activity under the Rehabilitation Act by requesting reasonable accommodation for her disability.

15. At all times relevant to this complaint, Defendant was aware of Plaintiff's race, national origin, disability status and protected activity.

### *Plaintiff's Employment with Defendant.*

16. Plaintiff was hired by the Defendant on August 8, 2015, as a Program Analyst, GS-0343-07 under a "Schedule A" excepted service appointment, which is reserved for hiring employees with disabilities.

17. On November 27, 2016, Plaintiff was converted and promoted to a new Schedule A excepted service appointment as a Records and Information Management (RIM) Specialist, GS-0308-09 following the reclassification of her position.

18. Plaintiff's position was on a career ladder from GS-9 to GS-12 and plaintiff was told verbally by her supervisor that all employees at the Access Board are promoted annually if they receive successful performance evaluations. On information and belief, Plaintiff is the only employee at the Access Board who did not receive a career ladder promotion that she was eligible for.

19. The purpose of the Plaintiff's position was to oversee, coordinate and implement the

Defendant's Records and Information Management Program.  As career ladder position, Plaintiff would be responsible for taking on progressively more complex duties.

20. From August 2015 through approximately July 2017, the Defendant rated the Plaintiff's performance as excellent.

21. From August 2015 through April 2018, Plaintiff's first line supervisor was Mr. Neil Melick.

22. From April 2018 through August 2018, Plaintiff's first line supervisor was Earlene Sesker.

23. David M. Capozzi was Plaintiff's second line supervisor at all times during her employment with the Defendant.

24. In the spring and summer 2017, Plaintiff verbally requested reasonable accommodation from her supervisor, Mr. Melick.

25. Prior to her request for accommodation, Plaintiff's performance was described by the Defendant as excellent.

26. Mr. Melick did not respond to Plaintiff's verbal requests for accommodation or refer Plaintiff to any policy or procedure for filing a formal request for accommodation.

27. In May 2017, Plaintiff asked her supervisor, Mr. Melick, about her upcoming eligibility for promotion to GS-11 as part of her career ladder promotion.

28. Plaintiff was eligible for promotion to GS-11 one year after she was promoted to GS-9, which meant she should be promoted to GS-11 if she was performing her duties at the GS-9 level as of November 28, 2017.

29. Mr. Melick informed Plaintiff that her promotion would be dependent solely on her performance of her RIM specialist duties and that Mr. Melick would rely on the feedback of Ms. Susan Little, a colleague of the Plaintiff's who was allegedly informally supervising her work, because Mr. Melick did not know what Plaintiff's duties were for her RIM specialist

position.

30. Plaintiff also asked Mr. Melick about her mid-year review as she had not received one and Mr. Melick told her the Agency does not conduct mid-year performance reviews.

31. Mr. Melick refused to provide Plaintiff with either a Performance Plan for the year or a mid-year review.

32. Following these discussions, Mr. Melick began to assign Plaintiff progressively more purchasing tasks that were unrelated to her position of record, with a substantial increase in purchasing tasks after July 2017.  These types of duties were what Mr. Melick told Plaintiff she would not get credit for in regard to her promotion.

33. Plaintiff's disabilities made it difficult for her to complete the purchasing tasks that were assigned to her outside of her position description.

34. Due to Plaintiff's disabilities and the nature of the purchasing tasks, Plaintiff verbally requested reasonable accommodation from Mr. Melick in the form of a simplified process to complete the purchasing tasks, including guidance on how to use the postage meter, and modifications to purchase card procedures.

35. Mr. Melick denied her request but did not refer her to any reasonable accommodation process.

36. Mr. Melick disregarded Plaintiff's disability and criticized her for by saying that she "lacked initiative" when in reality her disabilities were making it difficult to complete the additional duties he was assigning.

37. Following the request for accommodation, Mr. Melick further increased the volume of purchasing tasks assigned to Plaintiff.

38. Mr. Melick assigned these tasks knowing that it would make it more difficult for Plaintiff to complete her RIM Specialist duties and increase her proficiency in those duties, which was

necessary for her career ladder promotion according to Mr. Melick.

39. At or around the same time in July 2017, Plaintiff inquired to Mr. Melick about obtaining a desk audit to review her position of record and her duties to ensure they were aligned.

40. Mr. Melick denied the request and threatened to demote the Plaintiff if she obtained a desk audit.

41. Plaintiff did not request a desk audit out of fear of retaliation.

42. Due to the increases by Mr. Melick in Plaintiff's purchasing duties, approximately 80-85% of the Plaintiff's time was spent on purchasing tasks.

43. The assignment of job duties outside her position description and the threat of a demotion if she attempted to address these issues created a hostile environment and caused the Plaintiff to develop clinical anxiety and depression.

44. On October 11, 2017, Plaintiff requested reasonable accommodation in writing, including training to help her complete her non-RIM specialist duties.

45. The Defendant denied Plaintiff's request.

46. The Defendant failed to engage in the interactive process with the Plaintiff.

47. Mr. Melick denied prior knowledge of Plaintiff's accommodation requests after a written request was filed.

48. Subsequently, Mr. Melick reassigned Plaintiff's postage meter duties without discussion or explanation.

49. The Defendant's failure to accommodate the Plaintiff created a hostile work environment, caused severe anxiety and interfered with the Plaintiff's ability to perform the additional duties assigned, which was later used to deny her promotion to GS-11.

50. Caucasian and employees of American descent were granted accommodations by the

Defendant.

51. Mr. Melick showed favoritism to Caucasian and/or employees of American descent.

52. After Plaintiff requested accommodation in writing, the Defendant, by and through several management employees including Neil Melick (Director of Administration), Gretchen Jacobs (General Counsel), and David Capozzi (Executive Director), made false and/or disparaging statements both about the Plaintiff and to the Plaintiff about the Defendant's policies.

53. On October 18, 2017, Mr. Melick denied prior knowledge of Plaintiff's disability and prior requests for accommodation.

54. On November 12, 2017, Ms. Jacobs made several misleading or false statements regarding the Defendant's investigation of Plaintiff's use of the FEITH Document Database (FDD) that Plaintiff used as part of her RIM specialist job duties.

55. On January 8, 2018, in response to Plaintiff's request for a formal explanation for the Agency's decision not to promote her, Mr. Melick claimed that Plaintiff's promotion was denied because she had "time management issues", which was simply a result of her challenges in completing purchasing tasks unrelated to her position of record due to her disability and the Defendant's failure to accommodate her.

56. Mr. Melick made additional false statements in his memorandum on January 8, 2018, impugning Plaintiff's performance.

57. Mr. Melick and Ms. Jacobs also made numerous false and misleading statements regarding the Defendant's policies that inhibited the Plaintiff from obtaining accommodation and challenging the Defendant's actions related to her promotion.

58. Mr. Melick falsely claimed the Defendant did not provide performance plans or mid-year reviews.

59. Mr. Melick falsely claimed that Plaintiff needed to request a specific accommodation to initiate the interactive reasonable accommodation process, when all that is required is to notify the Defendant of a disability and need for assistance.

60. Mr. Melick claimed that "each career ladder position must have a documented career ladder plan, which, typically, is set forth in the position description(s) ("PD") for the position" and that "[t]his career plan outlines the duties and responsibilities at each grade level, as well as the criteria that must be met to be eligible for promotion at each successive grade level."

61. Plaintiff had never received a performance plan, despite Ms. Jacobs' claims later during the EEO investigation to the contrary.

62. Ms. Jacobs claimed that the Agency's grievance and disciplinary policies were under revision or recently revised, but according to Defendant's Human Resources representative, they were not instituted in the first place prior to those statements.

63. The Defendant's false statements and misrepresentations of policy were used to justify denying the Plaintiff reasonable accommodation and a promotion and to cover up for the Defendant's discriminatory and retaliatory actions.

64. In November 2017, Plaintiff asked Defendant's General Counsel, Ms. Jacobs, for a copy of the Defendant's grievance policy, if one existed.

65. Ms. Jacobs delayed providing Plaintiff that information until it was too late to file a grievance.

66. On November 28, 2017, the Defendant failed to promote the Plaintiff to her GS-11 career ladder position.

67. The Defendant's justification, as stated by Mr. Melick in a memorandum issued in January 2018, was, in part, that Plaintiff had allegedly not shown she was capable of performing the duties of a GS-11 based upon her performance of the purchasing tasks he had previously said

would not be relevant to her promotion and for which he had previously denied Plaintiff's request for accommodation.

68. Mr. Melick also claimed that Plaintiff's performance on RIM specialist duties was uneven despite the fact that her prior evaluation was excellent, no performance plan or mid-year evaluation was issued, and Mr. Melick had acknowledged previously that he did not understand Plaintiff's work or supervise her.

69. Mr. Melick had previously stated that Ms. Susan Little was responsible for evaluating Plaintiff's work and Plaintiff subsequently learned that the extent of Ms. Little's involvement in her informal evaluation leading to the denied promotion was limited to providing Mr. Melick with three things Plaintiff did well and three areas for improvement.

70. No annual evaluation was provided to the Plaintiff in 2018.

71. By denying the Plaintiff an evaluation and performance plan, the Defendant made it more difficult for Plaintiff to meet expectations and easier for the Defendant to create a pretext for its discrimination.

72. Mr. Melick also claimed that Plaintiff had performance issues related to the FDD, while ignoring malfunctions and system problems that required contractors to come on-site to complete the work. These system malfunctions made it impossible for Plaintiff to perform assigned tasks in the FDD.

73. On January 27, 2018, Mr. Melick issued Plaintiff a Notice of Proposed Removal that contained numerous false and disparaging statements about the Plaintiff, including that she exhibited "poor judgment" and that she had received training that was never provided to her.

74. The proposal falsely accused Plaintiff of misusing government computer systems, notwithstanding the Defendant's knowledge that no policy or rules existed regarding the

alleged misuse, Plaintiff was using the system for legitimate work-related purposes and Defendant never informed Plaintiff that her use would be considered improper.

75. On April 25, 2018, Mr. Capozzi, in issuing a decision to suspend Plaintiff for 14 days, misrepresenting her requests for accommodation and falsely alleging that Plaintiff had previously been counseled regarding her conduct.

76. On July 11, 2018, Ms. Jacobs claimed to Senator Chris Van Hollen that there was "unassailable evidence" of Plaintiff's alleged misuse of the FDD system despite the fact that the Ms. Jacob's own investigation revealed, at most, only "circumstantial evidence".

77. After Plaintiff returned to work following her suspension, the Agency refused to return her duties related to the FDD, which deprived her of the ability to perform work related to her position and to obtain a promotion.

78. Non-disabled, Caucasian employees of non-foreign descent were not subjected to the same treatment as Plaintiff.

79. Plaintiff received a cash bonus for her performance in 2018 but did not receive a promotion.

80. Based upon information and belief, a cash bonus is only awarded to employees who perform at the excellent level.

81. Other similarly situated employees of different disability status, race and national origin who performed at a comparable level to the Plaintiff were promoted in accordance with their career ladder progression, which was consistent with the Agency's past practice and consistent with what Mr. Melick had communicated to Plaintiff as to when she would be promoted up the career ladder.

82. The Defendant failed to promote to her GS-11 career ladder position during the remainder of her employment with Defendant and she resigned on August 31, 2018.

## COUNT 1

(42 U.S.C. § 2000e – Discrimination on the Basis of Race and National Origin)

83. Plaintiff repeats and realleges paragraphs 1–82, above, as if fully set forth herein.

84. Defendant discriminated against Plaintiff on the basis of race and national origin.

85. By and through its conduct, Defendant violated Title VII.

86. Defendant's actions were intentional, reckless, and malicious.

87. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 2

(42 U.S.C. § 2000e *et seq.* – Hostile Work Environment on the Basis of Retaliation)

88. Plaintiff repeats and realleges paragraphs 1–82, above, as if fully set forth herein.

89. Defendant subjected Plaintiff to harassment and a hostile work environment in retaliation for Plaintiff's protected activity.

90. By and through its conduct, Defendant violated Title VII.

91. Defendant's actions were intentional, reckless, and malicious.

92. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 3

(29 U.S.C. § 701 *et seq.* – Hostile Work Environment on Basis of Disability and Retaliation)

93. Plaintiff repeats and realleges paragraphs 1–82, above, as if fully set forth herein.

94. Defendant subjected Plaintiff to harassment and a hostile work environment on the basis of disability and in retaliation for requesting accommodation.

95. By and through its conduct, Defendant violated the Rehabilitation Act.

96. Defendant's actions were intentional, reckless, and malicious.

97. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

### COUNT 4

(29 U.S.C. § 701 *et seq.* – Failure to Accommodate)

98. The allegations in the foregoing paragraphs, 1 – 82, are incorporated as if realleged herein.

99. Plaintiff is a disabled individual under the Rehabilitation Act and the Defendant was on notice of her disabilities and disabled status and requests for accommodation.

100. Defendant denied Plaintiff reasonable accommodation and failed to engage in the interactive process as required by law.

101. As a result of Defendant's refusal to accommodate Plaintiff, she suffered harm including lost wages and benefits, pain and suffering and lost career potential.

102. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer harm, including severe emotional distress, as well as pecuniary losses, litigation expenses including attorneys' fees, and other non-pecuniary losses.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant on Counts 1-4, and award Plaintiff lost wages and benefits; retroactive promotion; removal of derogatory and discriminatory records and actions from her official personnel files; compensatory damages in the amount of $300,000, or in an amount to be determined at trial, for pain and suffering and emotional distress; pre- and post-judgment interest; costs; attorneys' fees; and any such other relief as is just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts.


Date: September 23, 2019                              Respectfully submitted,


                                                     By: ___/s/ Matthew Estes_____
                                                     Matthew Estes (DC Bar No. 989814)
                                                     **ALAN LESCHT & ASSOCIATES, PC**
                                                     1825 K Street, N.W., Suite 750
                                                     Washington, DC  20006
                                                     Tel:    (202) 463-6036
                                                     Fax:    (202) 463-6067
                                                     matthew.estes@leschtlaw.com

                                                     Counsel for Plaintiff